IN THE UNITED STATES BANKRUPTCY COURT

FOR THE DISTRICT OF WYOMING

FILED
3:21 pm, 3/31/11
Tim J. Ellis
Clerk of Court

| | |
|---|---|
| In re ) | |
| ) | |
| NORMAN SHAWN STRAHAN and ) | Case No. 10-20244 |
| STEPHANIE LYNN STRAHAN ) | Chapter 13 |
| ) | |
| Debtors. ) | |

## OPINION ON CONFIRMATION OF DEBTORS'
## FOURTH AMENDED CHAPTER 13 PLAN DATED OCTOBER 5, 2010

On January 11, 2011, this matter came before the court for an evidentiary hearing on Confirmation of Debtors' Fourth Amended Chapter 13 Plan ("Fourth Amended Plan") dated October 5, 2010 and the Trustee's objection. Norman and Stephanie Strahan ("Debtors") were represented by Ken McCartney. Mrs. Strahan did not attend the hearing. The standing chapter 13 trustee, Mark Stewart, represented himself. The court having reviewed the record, based upon the following, denies confirmation of the Fourth Amended Plan.

The Trustee objects to confirmation of the plan for the following reasons: (1) the Debtors do not propose to pay all their projected disposable income into the plan to make payments to unsecured creditors; (2) the plan was proposed in bad faith; and, (3) the case was filed in bad faith.

1. <u>Payment of projected disposable income.</u>

If a trustee objects to the confirmation of a plan, then the court may not approve the plan unless, as of the effective date of the plan, the plan provides that all of the

debtor's projected disposable income to be received in the applicable commitment period beginning on the date that the first payment is due under the plan will be applied to make payments to unsecured creditors under the plan.[1] Disposable income means the current monthly income received by the debtor less amounts reasonably necessary to be expended for the maintenance or support of a debtor or debtor's dependents.[2]

On the date of filing, Mr. Strahan reported on Schedule I, his monthly gross income in the amount of $4,213.00, from self employment. Mr. Strahan began working for Robinson Grinding and Profiling, LLC ("Robinson Grinding") in April 2010. Mrs. Strahan does not work outside the home. The Debtors have three children. As Debtors' income is below the median income for a family of their size in the District of Wyoming, their monthly disposable income is determined by Schedules I and J. On October 5, 2010, the Debtors filed an Amended Schedule J, indicating a current monthly gross income in the amount of $6,227.00. Debtors list a total amount of $4,628.00 monthly expenditures on their Amended Schedule J. Below median income debtors must prove on a case-by-case basis that each claimed expense is reasonably necessary.[3]

The Debtors' Fourth Amended Plan proposes that the Debtors shall pay the following claims: Class 8: Chase (mortgage); Citibank (Dodge); Kay Jewelry (Jewelry);

---

[1] 11 U.S.C. §1325(b)(1)(B).

[2] 11 U.S.C. §1325(b)(2)(A)(I).

[3] 11 U.S.C. §1325(b)(2) and (3).

Class 4: the arrearages on the mortgage and the Dodge; Class 3: (secured claim to HSBC, cramming down the payments under § 506 on the Taurus). Additionally, Debtors propose to pay non-priority, unsecured claims a total amount of $818.00 or a distribution of approximately 1.5% on filed claims in the total amount of $60,225.59.

 a. <u>Kay Jewelry claim.</u>

The Debtors propose to pay Kay Jewelry the amount of $327.38 under Class 8. The Trustee objects to this payment on two grounds: (1) the payment is not reasonably necessary for the maintenance or support of the Debtors or their dependents; and, (2) the payment is discriminatory to other unsecured creditors.

Mr. Strahan testified that the claim had been paid in full by monthly payments of $40.00 since the bankruptcy petition had been filed. The purchase was for a wedding ring for Mrs. Strahan. The Debtors have the burden of proving that each element under 11 U.S.C. §1325 has been met for confirmation of their plan and in this case that their claimed expenses for the payment of the jewelry was reasonably necessary. Mr. Strahan did not provide testimony as to the reasonable necessity of the payment for the ring. Based upon the lack of testimony, the Debtors did not convince the court payment for the jewelry was an expense reasonably necessary for the maintenance of the Debtors or their dependents. However, as this jewelry was so important to the Debtors, they chose to pay this claim in full, they should be willing to pay that same portion into the estate for the benefit of their unsecured creditors.

Page 3

    b.    <u>Increases in income and expenses</u>.

Mr. Strahan testified regarding the increases in income and expenses reflected on the Debtors' Amended Schedules I and J. Mr. Strahan obtained a job after the bankruptcy case was filed rather than continue to operate his business. The employment accounts for the increase in income.

Mr. Strahan also explained the circumstances of his attempts to get a loan modification for the home mortgage. His attempts ultimately failed and the monthly payment of his mortgage increased "back to" $2,038.00 per month. The court finds that this mortgage expense is reasonably necessary for the maintenance of the Debtors and their dependents as the family must have a place to live.

Mr. Strahan accounted for the reduction in auto installment payments. Under the Fourth Amended Plan, the payments for the Taurus were "crammed-down," lowering the Debtors' auto installment payments.

Mr. Strahan testified that he claims $280.00 a month additional expenses for work. He is provided housing and a daily per diem of $30.00. According to Mr. Strahan's testimony, this amount does not cover his costs while working away from home. He mentioned laundry expenses as an additional cost. However, he did not testify to other costs nor provide receipts to support the $280.00 monthly expense. The Debtors did not meet the burden of establishing that this expense is reasonably necessary.

Mr. Strahan also testified that the additional expenses designated on the Debtors'

Amended Schedule J as "Personal Expenses for 5 people" were his wife's and the children's expenses. However, he did not provide testimony for specific expenses nor provide receipts. The Debtors failed to meet their burden of establishing that this additional expense is reasonably necessary.

Based upon the above analysis, the Debtors are not contributing all of their projected disposable income into the plan to be paid to unsecured creditors.

2.  <u>The plan was not proposed in good faith</u>.

The Trustee alleges that the plan cannot be confirmed as it is not proposed in good faith. The Bankruptcy Code provides that the court shall confirm a plan if, among other things, the plan has been proposed in good faith and not by any means forbidden by law.[4] Best efforts, without more, are not enough.[5] The Debtor has the burden of proving good faith.[6] Good faith is evaluated on a "case-by-case basis" examining the totality of the circumstances.[7] In *Flygare*, the Tenth Circuit adopted a nonexhaustive list of eleven relevant factors to guide courts in their determination of good faith. Those factors are:

(1)  The amount of the proposed payments and the amount of the debtor's surplus;

(2)  the debtor's employment history, ability to earn and likelihood of future increases in income;

---

[4] 11 U.S.C. §1325(a)(3).

[5] *In re Caldwell*, 895 F.2d 1123 (6th Cir. 1990).

[6] *In re Alexander*, 363 B.R. 917 (10th Cir. BAP 2007).

[7] *Flygare v. Boulden*, 709 F.2d 1344 (10th Cir. 1983).

(3) the probability or expected duration of the plan;

(4) the accuracy of the plan's statements of debts, expenses and percentage repayment of unsecured debt and whether any inaccuracies are an attempt to mislead the court;

(5) the extent of preferential treatment between classes of creditors;

(6) the extent to which secured claims are modified;

(7) the type of debt sought to be discharged and whether any such debt is nondischargeable in Chapter 7;

(8) the existence of special circumstances such as inordinate medical expenses;

(9) the frequency with which the debtor has sought relief under the Bankruptcy Code;

(10) the motivation and sincerity of the debtor in seeking chapter 13 relief; and

(11) the burden which the plan's administration would place upon the trustee.

Applying those factors to the case before the court:

(1) The Debtors' Fourth Amended Plan proposes to pay "$120 for four months, $510 for one month, then $552 for 49 months for a total of 55 months, extended as necessary, for a total amount of not less than $28,050.00." The Debtors admit that the purpose of filing for bankruptcy was to save their house and vehicles as they have significant arrearage amounts included in the plan.

(2) Mr. Strahan began his employment with Robinson Grinding after filing for bankruptcy protection. Prior to that he was self employed.[8]

(3) The Debtors' Fourth Amended plan is proposed for a period of 55 months, although as below-median income debtors they are only required to propose a plan of 36 months.

---

[8] Mr. Strahan testified to some employment prior to Robinson Grinding, but it was unclear to the court the length or wages received.

Page 6

(4) The Trustee pointed out that the arrearage amount proposed to CitiFinancial does not correspond to the amount of the claim filed. There were no allegations that this was an attempt to mislead to court.

(5) The Trustee alleges that the payment to Kay Jewelry is discriminatory. The court has determined that the expense was not a reasonable and necessary expense for the Debtors or their dependents. However, the Debtors chose to pay that claim, post-petition, in spite of objections by the Trustee.

(6) The Fourth Amended Plan proposes to modify the secured claim to HSBC for the 2005 Taurus in Class 3, subject to §506, as allowed by law.

(7) As stated above, the Debtors filed this Chapter 13 bankruptcy case to save their house and vehicles. The court's review of the docket and specifically, the Debtors' Schedule F shows that the Debtors listed $73,976.00 in unsecured debt reflecting: $21,193.00 (personal loans); $20,100.00 (deficiency on a repossessed vehicle); $7,435.00 (medical); $25,248.00 (furniture and credit cards).

(8) Mr. Strahan did not testify at this hearing regarding any inordinate medical conditions. However, at a previous plan confirmation hearing, Debtors' counsel made reference to Mrs. Strahan having been ill.

(9) It is uncontested that the Debtors have filed for bankruptcy relief six times, three of which are reported to be chapter 7 bankruptcy cases. The latest was filed in the District of Utah in October 2002. Mr. Strahan objected that one of those filings should not be considered, due to his attorney "going off to war" the case had to be dismissed and re-filed.

(10) The court does not doubt that the Debtors are motivated to retain their home and vehicles. However, their bankruptcy history filings and nominal proposed payments to unsecured creditors make the court doubt their sincerity in wanting to gain a fresh start as much as the Debtors appear to be using this Chapter 13 as a way to discharge a substantial amount of unsecured debt.

(11) The Trustee, in the course of administering this case, has filed a Motion to Dismiss, alleging that the Debtors were delinquent in their plan payments for four months. At the hearing, the Trustee reported that the Debtors had paid all but $30.00 of the delinquent payments. The Trustee has incurred additional time administering this case due to the Debtors' failure to make their plan payments timely, even before a plan has been confirmed.

The Tenth Circuit Bankruptcy Appellate Panel held that courts should not approve a Chapter 13 plan which is nothing more than a "veiled" chapter 7 case. "A chapter 13 plan proposing to repay only a small portion of debt which could not be discharged under Chapter 7 deserves particular scrutiny."[9] The court does not find that these Debtors are attempting to discharge debt that is not dischargeable in a chapter 7. However, it is apparent that the proposed plan provides a nominal distribution to unsecured creditors.

The totality of the testimony and evidence presented supports the Trustee's allegation that the Fourth Amended Plan was not proposed in good faith. The Debtors' casual attitude toward repaying their debts, paying plan payments timely, and proposing a nominal payment to unsecured creditors shows that the plan was not proposed in good faith. Debtors continued to pay the Kay Jewelry debt, post-petition, in spite of the objections filed by the Trustee. Additionally, after that claim has been paid in full, Debtors do not propose to include the additional $40.00 a month to the proposed distribution to unsecured creditors. The Bankruptcy Court in the District of New Mexico stated,

> "A court's inquiry as to a debtor's good faith, at its core, requires consideration of whether the debtor came to the bankruptcy court seeking a fresh start under Chapter 13 protection with an intent that is consistent with the spirit and purpose of that law - rehabilitation through debt repayment - or with an intent contrary to its purposes - debt avoidance through manipulation of the Bankruptcy Code."[10]

---

[9] *In re Davis*, 239 B.R. 573 (10th Cir. BAP 1999).

[10] *In re Sanchez*, No. 13-09-10955, 2009 Bankr. LEXIS 2822 (Bankr. N.M., May 19, 2009).

It appears to the court that the Debtors do not have the requisite intent of rehabilitation through debt repayment. This proposed plan is an attempt to discharge as much of the Debtors' unsecured claims as possible and still be in a chapter 13 in this district. The Debtors have not attempted any rehabilitation of their spending ways as apparent by the amount and kind of classified debts incurred. The court finds that this plan is not proposed in good faith.

As the court has determined that the plan is not confirmable because (1) the Debtors do not propose to pay all their projected disposable income into the plan; and (2) the plan was not proposed in good faith, it declines to address whether the bankruptcy case was not filed in good faith or address the clerical errors.

This opinion constitutes the Court's findings of fact and conclusions of law. A separate order shall be entered pursuant to Fed. R. Bankr. P. 9021.

DATED this _31_ day of March 2011.

                        BY THE COURT

                        _____
                        United States Bankruptcy Judge

cc:  Ken McCartney
     Mark Stewart